IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TOMMIE I. REED,

    *Plaintiff*,

    v.

STATE OF MARYLAND,
DEPARTMENT OF HUMAN
RESOURCES,

    *Defendant*.

Civil Action No. ELH-12-0472

## MEMORANDUM OPINION

Tommie I. Reed, plaintiff, was terminated as an income maintenance specialist for the Prince George's County Department of Social Services ("Social Services"), which is part of the State of Maryland, Department of Human Resources (the "Department").  Reed sued the Department, the sole defendant, for illegal employment practices and discrimination based on race, gender, and disability.  *See* Compl. ¶¶ 1, 6, 35, 43, 51, 58, 64 (ECF 1).  In particular, Reed claims that the Department violated the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*, by refusing to grant him more than one month of leave for mental illness (Count I), *see* Compl. ¶ 34, and by terminating him for remaining on leave for longer than one month (Count II).  *See id.* ¶ 41.  Reed also alleges that the Department violated Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e *et seq.*, by discriminating against him on the basis of his race as an African-American (Count III), *see* Compl. ¶¶ 47, 51, and on the basis of his gender as a male (Count IV).  *See id.* ¶¶ 54, 58.  Further, Reed alleges that the Department violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12112 *et seq.*, by discriminating against him on the basis of his disability as an individual with major

depression (Count V).[1]  *See* Compl. ¶¶ 63-64.  He seeks reinstatement as well as monetary damages "in an amount greater than" $300,000 as "compensatory," "liquidated," and "punitive" damages.  *See id.* ¶¶ 37, 45, 52, 59, 66.

Pursuant to Rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure, the Department moved to dismiss for failure to state a claim, or, alternatively, for summary judgment ("Motion to Dismiss" or "MTD," ECF 4-1), arguing that the Eleventh Amendment bars Reed's FMLA and ADA claims for money damages, and that Reed's other claims fail as a matter of law.  In a combined submission, Reed opposed the Motion to Dismiss and moved to file an amended complaint, so as to substitute Deon Carter, the Department's Personnel Manager, and Gloria Brown, the Director of Social Services,[2] as defendants, in their individual and official capacities, with respect to his FMLA and ADA claims ("Motion to Amend" or "MTA," ECF 12).  In a combined submission, the Department replied to the opposition and filed an opposition to the Motion to Amend ("Department Reply," ECF 15).  Thereafter, Reed replied to defendant's opposition to his Motion to Amend ("Reed Reply," ECF 18).

Both motions have been fully briefed, and no hearing is necessary to resolve them.  *See* Local Rule 105.6.  For the reasons that follow, I will grant the Motion to Dismiss as to Counts I, II, and V, but with leave to amend Counts I and II; I will deny the Motion to Dismiss as to Counts III and IV; and I will grant the Motion to Amend as to Counts I and II to permit Reed to substitute Brown and Carter as defendants in regard to his FMLA claims.

---

[1] This Court has jurisdiction under 28 U.S.C. § 1331.

[2] Although the Complaint refers to Brown as the Department's Director, *see* Compl. ¶ 13, the Department refers to Brown as the Director of Social Services.  *See* Dep't Reply at 5 (ECF 15).  Reed does not dispute the Department's assertion as to Brown's position of employment.

**Factual Background**

In March 2005, Reed, an African-American male, began work as an income maintenance specialist at Social Services, "a unit of the Department." Compl. ¶¶ 5-7. In December 2009, "Reed began experiencing major depression." *Id.* ¶ 8. On April 22 and 23, 2010, he called in sick because of his depression; April 21, 2010 was the last day on which Reed worked. *See id.* ¶¶ 8-9. Reed "completed the necessary FMLA paperwork and submitted it to Deon Carter," the Department's Personnel Manager, on April 26, 2010. *Id.* ¶ 10. On May 5, 2010, Reed's psychiatrist completed a FMLA medical certification form, stating that "Reed was 'unable to work while he is on leave' and that his condition could last 'indefinitely.'" *Id.* ¶ 12. According to Reed's psychiatrist, "Reed required at least 'a month off from work in order to be able to refocus when he returns.'" *Id.* Reed requested four weeks of medical leave under the FMLA. *See id.* ¶ 13; Request for Family and Medical Leave, April 26, 2012 ("FMLA Request," ECF 4-2). Gloria Brown, the Director of Social Services, granted Reed's request for medical leave until May 26, 2010 (retroactive to April 26, 2010). *See* Compl. ¶ 13.

In May and June 2010, on at least seven separate occasions, Reed allegedly "called or sent text [or Facebook] messages to Gwynn Thompson, his supervisor,[3] providing updates about his current medical condition and need for continued absence." *Id.* ¶¶ 16-17. Reed does not allege that he indicated to Thompson when he expected to regain his health or return to work. But, according to Reed, "Thompson assured him that it was fine that he remained on FMLA leave and advised him to get well." *Id.* ¶ 18. Despite Thompson's alleged assurances, on July 1, 2010, Deon Carter mailed a letter to Reed, stating that the Department had terminated Reed's

---

[3] The Department disputes that Thompson was, in fact, Reed's supervisor. *See* Affidavit of Deon T. Carter ¶ 7 ("Carter Aff.," ECF 15-1).

employment because Reed "had 'been absent from the work place since April 22, 2010 for reasons unknown to Personnel' and that it had 'not received any documents to substantiate [his] absence.'"  *Id.* ¶ 20 (alteration in original).[4]  Carter claimed that "Reed had failed to submit 'any medical documentation to justify your continued absence nor have you contacted your supervisor or Personnel Services regarding your continued absence from the work place.'"  *Id.*

According to the Complaint, the Department had allowed "several female employees" at least twelve weeks of medical leave under FMLA.  *Id.* ¶ 25.  Specifically, Reed alleges that one of these female employees was white and pregnant, and one had a mental illness.  *See id.* ¶ 26-27.[5]

On July 6, 2010, Reed filed with the Equal Employment Opportunity Commission ("EEOC") a charge of discrimination against the Department.  *See id.* ¶ 28.  He received a right-to-sue letter from the EEOC on November 17, 2011.  *See id.* ¶ 29.  On February 25, 2012, Reed filed the suit against the Department, as noted.

---

[4] As of July 1, 2010, plaintiff had been absent for about ten weeks.  Under the FMLA, an employer must provide up to twelve weeks of leave during any twelve-month period to an employee with a qualifying "serious health condition."  29 U.S.C. § 2612(a)(1)(D).  It is unlawful for an employer "to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]."  *Id.* § 2615(a)(1).  However, depending on the circumstances, an employee may have to navigate certain procedural requirements before exercising rights under the FMLA.  *See, e.g.*, Employee Notice Requirements for Foreseeable FMLA Leave, 78 Fed. Reg. 8834-01, 8933 (Feb. 6, 2013) (to be codified at 29 C.F.R. § 825.302(c)) ("When an employee seeks leave due to a qualifying reason, for which the employer has previously provided the employee FMLA–protected leave, the employee must specifically reference either the qualifying reason for leave or the need for FMLA leave.  Calling in 'sick' without providing more information will not be considered sufficient notice to trigger an employer's obligations under the Act."); *Howard v. Inova Health Care Servs.*, 302 F. App'x 166, 176 n.6 (4th Cir. 2008) (discussing FMLA requirement that, at expiration of approved FMLA leave, employee must provide fitness-for-duty certification to return to work or, alternatively, a new medical certification for serious health condition to obtain extension of leave).

[5] The race of the second female is not alleged in the Complaint.

**Standard of Review**

Defendant's motion is captioned as a motion to dismiss under Fed. R. Civ. P. 12(b)(6), or, alternatively, for summary judgment under Fed. R. Civ. P. 56.   Defendant's Motion to Dismiss is supported by exhibits.   I will treat defendant's motion as a motion to dismiss, without converting it to a summary judgment motion.   For purposes of both the Motion to Dismiss and the Motion to Amend, the legal issues are adequately framed by the facts contained in the Complaint and certain documents submitted by the parties that may be considered under Rule 12(b)(6).

A motion to dismiss under Fed. R. Civ. P. Rule 12(b)(6) tests the adequacy of a complaint.   To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008); *see Aschroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see, e.g., Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) (applying *Twombly* plausibility standard).

Whether a complaint adequately states a claim for relief is judged by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).   *See Twombly*, 550 U.S. at 554-55.   Rule 8(a)(2) provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."   Although a plaintiff need not include "detailed factual allegations," the rule demands more than bald accusations or mere speculation.   *Twombly*, 550 U.S. at 555. To satisfy the minimal requirements of the rule, the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of

those facts is improbable and . . . recovery is very remote and unlikely." *Id.* at 556 (brackets in original) (internal quotation marks omitted).  A complaint that provides no more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action," is insufficient.  *Id.* at 555.

When deciding a motion to dismiss pursuant to Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," and "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted).  However, the court is not required to accept legal conclusions drawn from the facts.  *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Monroe v. City of Charlottesville, Va.*, 579 F.3d 380, 385-86 (4th Cir. 2009).  And, if the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown that "the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (citation omitted).

As noted, defendant's motion is supported by exhibits.  Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).  But, under F. R. Civ. P. 12(d), a district court has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it."  5C Wright & Miller, Fed. Prac. & Pro. § 1366, at 159 (3d ed. 2004, 2011 Supp.); *see Kensington Vol. Fire Dep't, Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011), *aff'd*, 684 F.3d 462 (4th Cir. 2012).  Generally, if a court considers material outside of the

- 6 -

pleadings, "the motion must be treated as one for summary judgment under Rule 56," in which case, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

"[T]he term 'reasonable opportunity' requires that all parties be given 'some indication by the court . . . that it is treating the 12(b)(6) motion as a motion for summary judgment, with the consequent right in the opposing party to file counter affidavits or pursue reasonable discovery.'" *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (quoting *Johnson v. RAC Corp.*, 491 F.2d 510, 513 (4th Cir. 1974)). When the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998); *see Gay*, 761 F.2d at 177 ("When a party is aware that material outside the pleadings is before the court, the party is on notice that a Rule 12(b)(6) motion may be treated as a motion for summary judgment."). And, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)).

Nevertheless, conversion is not required in order for the court to consider all of the material filed by a defendant in connection with the Motion to Dismiss. Specifically, "when a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining

whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity.'" *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (alterations in original) (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 606, 618 (4th Cir. 1999)); *see also Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Additionally, facts and documents subject to judicial notice may be considered by a court, without converting the motion under Rule 12(d). *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011).

Accordingly, I may consider the EEOC charge that Reed filed, *see* Dep't Reply Exh. B ("EEOC Charge," ECF 15-2), without converting the Motion to Dismiss to a summary judgment motion. Reed relied on the EEOC Charge to satisfy the timeliness requirement for his discrimination claims, *see* Compl. ¶¶ 28-29, and therefore it is integral to the Complaint. *See, e.g.*, *Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 565 (2d Cir. 2006) ("[I]t is proper for this court to consider the plaintiff's relevant filings with the EEOC . . . none of which were attached to the complaint, because the [ ] plaintiffs rely on these documents to satisfy the ADEA time limit requirements."). Additionally, the EEOC Charge is subject to judicial notice and thus may be considered without converting the Motion to Dismiss to a summary judgment motion. *See, e.g.*, *Muhammad v. N.Y. City Transit Auth.*, 450 F. Supp. 2d 198, 204 (E.D.N.Y. 2006) (finding that an EEOC charge of discrimination and determination could be properly considered on a motion to dismiss because "plaintiff's EEOC charge and the agency's determination are both public records, of which this Court may take judicial notice").

I may also consider, without conversion, the three documents that the Department attached to its Motion to Dismiss: (1) the letter in which Brown granted Reed's request for FMLA leave; (2) Reed's request for FMLA leave; and (3) the FMLA medical certification form completed by Reed's psychiatrist. *See* ECF 4-2. In the Complaint, Reed referred to all three of these documents and relied on them to substantiate his claims. *See* Compl. ¶¶ 10, 12-13. Nor does he challenge their authenticity. Because these three documents are integral to the Complaint, they may be considered in connection with defendant's Motion to Dismiss. *See Am. Chiropractic*, 367 F.3d at 234.

In contrast, the Carter Affidavit, which the Department attached to its Reply, is not integral to the Complaint, because it was not relied upon by plaintiff and it is not subject to judicial notice, and may not be considered on a motion to dismiss. *See Am. Chiropractic*, 367 F.3d at 234. Although converting the motion to summary judgment would allow consideration of the Carter Affidavit, I see no need to consider the Affidavit. To be sure, plaintiff failed to offer an affidavit or declaration under Rule 56(d) explaining why further discovery is needed to oppose the Motion to Dismiss or to rebut the Carter Affidavit. *See* Fed. R. Civ. P. 56(d); *Harrods Ltd.*, 302 F.3d at 244. But, plaintiff indicated in the Motion to Amend that he "has not yet had an opportunity to conduct discovery that will potentially support Plaintiff's discrimination claims." MTA at 1 n.2.

## Discussion

### A. FMLA Claims

Reed alleges that defendant violated the FMLA by wrongly denying him FMLA leave and retaliating against him for exercising his rights under the FMLA. *See* Compl. ¶¶ 26, 33.[6]  In its Motion to Dismiss, defendant contends that the Eleventh Amendment precludes Reed from recovering monetary damages from the Department under the FMLA, as requested in Counts I and II. *See* MTD at 3-4.  Reed concedes this point in his Motion to Amend. *See* MTA at 1.  The parties are correct.  Therefore, for the reasons addressed below, I will dismiss the FMLA claims against the Department.

The Eleventh Amendment states, in part:  "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State . . . ."  U.S. CONST. Amend. XI.

A plaintiff cannot recover damages from a State for the violation of 29 U.S.C. § 2612(a)(1)(D), the FMLA's "self-care" provision, because: (1) the Eleventh Amendment secures a State's defense of sovereign immunity from suit in federal court; and (2) in enacting the FMLA's self-care provision, Congress did not, through the Fourteenth Amendment, abrogate the States' sovereign immunity. *See Coleman v. Ct. of Appeals of Md.*, ___ U.S. ___, 132 S. Ct. 1327, 1337-38 (2012) (plurality opinion); *see also City of Boerne v. Flores,* 521 U.S. 507 (1997) (articulating standard to review validity of legislative abrogation of Eleventh Amendment immunity); *Bd. of Trs. of Univ. of Ala. v. Garrett,* 531 U.S. 356 (2001).

Section 1 of the Fourteenth Amendment guarantees equal protection and due process. *See* U.S. CONST. Amend. XIV.  As the Court explained in *Coleman*: "'Section 5 grants Congress

---

[6]  Defendant has not contested Reed's allegation that he was entitled to continue taking FMLA leave after the initial month of leave had expired.  Therefore, the merits of Reed's FMLA claims are not presently at issue.

the power 'to enforce' the substantive guarantees of §1 of the Amendment by 'appropriate legislation.'"   132 S. Ct. at 1333.   The enforcement power "'includes the authority both to remedy and to defer violation[s] of rights guaranteed'" by § 1.  *Garrett*, 531 U.S. at 365 (quoting *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 81 (2000)).   "In other words, Congress may enact so-called prophylactic legislation that proscribes facially constitutional conduct, in order to prevent and deter unconstitutional conduct."  *Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 727-28 (2003).

In *Coleman*, the Court explained that, in enacting the FMLA's self-care provision, Congress had not found evidence that "States had facially discriminatory self-care leave policies or that they administered neutral self-care leave policies in a discriminatory way."  132 S. Ct. at 1334.   Therefore, Congress failed to "identify conduct transgressing the Fourteenth Amendment's substantive provisions."  *Id.* at 1338.  As a result, the Court held that Congress had not validly abrogated the States' sovereign immunity under the FMLA's self-care provision.  *Id.*[7]

While conceding the Complaint's defect in this regard, Reed has moved to file an amended complaint to substitute Carter and Brown as defendants, seeking damages from them in their individual capacities, and seeking reinstatement by them in their official capacities.  *See* MTA at 3; Am. Compl. ¶¶ 39, 47.  "Personal-capacity suits seek to impose personal liability

_____

[7] The *City of Boerne* test is used to determine whether a legislative abrogation of a state's Eleventh Amendment immunity is validly enacted prophylactic legislation under § 5 of the Fourteenth Amendment.  Under *City of Boerne* and its progeny, legislation enacted pursuant to Congress' § 5 authority is valid if there is "a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end."  *City of Boerne*, 521 U.S. at 520.   Put another way, Congress must "identify conduct transgressing the Fourteenth Amendment's substantive provisions, and must tailor its legislative scheme to remedying or preventing such conduct."  *Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank*, 527 U.S. 627, 629 (1999).

upon a government official for actions he takes under color of state law," whereas official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).

   i.   *Individual Capacity FMLA Claims*

In the Fourth Circuit, "whether the FMLA imposes liability on employee supervisors in their individual capacities is an open question." *Jones v. Sternheimer*, 387 F. App'x 366, 368 (4th Cir. 2010). And, district courts within the Fourth Circuit have not reached a consensus as to the individual liability of *public* employees under the FMLA. *See Ainsworth v. Loudon Cnty. Sch. Bd.*, 851 F. Supp. 2d 963, 972 (E.D. Va. 2012) (noting that "district courts within the Fourth Circuit are split" as to individual liability for public supervisors, and collecting cases). Indeed, even within the District of Maryland, courts have reached opposing conclusions as to whether supervisors at public agencies can be held liable in their individual capacities under the FMLA. *Compare Knussman v. Maryland*, 935 F. Supp. 659, 664 (D. Md. 1996) (Black, Jr., J.) (holding that public supervisors can be held liable in their individual capacities under the FMLA because the FMLA's definition of "employer" was similar to that of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203(d), which permits such liability) (citing *Brock v. Hamad*, 867 F.2d 804, 808 n.6 (4th Cir. 1989) (per curiam)), *with Sadowski v. U.S. Postal Serv.*, 643 F. Supp. 2d 749, 756 (D. Md. 2009) (Bennett, J.) (rejecting individual liability for public employees under the FMLA in light of Sixth Circuit decision in *Mitchell v. Chapman*, 343 F.3d 811, 832 (6th Cir. 2003)); *Bosse v. Balt. Cnty.*, 692 F. Supp. 2d 574, 583 (D. Md. 2010) (Grimm, J.) (same, relying on *Sadowski*); *Mezu v. Morgan State Univ.*, Civil Action No. WMN-09-2855, 2010 WL 1068063, at *12 n.15 (D. Md. Mar. 18, 2010) (Nickerson, J.) (same, relying on *Sadowski*); *Kronk*

*v. Carroll Cnty.*, Civ. No. L-11-0277, 2012 WL 245059, at *8 (D. Md. Jan. 25, 2012) (Legg., J.) (same, relying on *Sadowski*).

However, three of the five federal courts of appeal to address the question have held that public supervisors can be held liable in their individual capacities under the FMLA. *Compare Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 667 F.3d 408, 414-17 (3d Cir. 2012) (holding that supervisors at public agencies are subject to suit in their individual capacities under the FMLA), *Modica v. Taylor*, 465 F.3d 174, 184-87 (5th Cir. 2006) (same), *and Darby v. Bratch*, 287 F.3d 673, 680-81 (8th Cir. 2002) (same), *with Mitchell v. Chapman*, 343 F.3d 811, 832 (6th Cir. 2003) ("[T]he FMLA's individual liability provision does not extend to public agencies."), *and Wascura v. Carver*, 169 F.3d 683, 687 (11th Cir. 1999) ("[A] public official sued in his or her individual capacity is not an 'employer' under the FMLA . . . .").

The Third Circuit's 2012 decision in *Haybarger*, which found in favor of public supervisor liability, was issued after *Sadowski*, on which several Maryland cases relied. In light of the circuit split, it is appropriate to revisit the competing interpretations of the FMLA's individual liability provision.

Statutory interpretation "'begin[s] with the text and structure of the statute.'" *Morgan v. Sebelius*, 694 F.3d 535, 537 (4th Cir. 2012) (quoting *Nat'l Elec. Mfrs. Ass'n v. U.S. Dep't of Energy*, 654 F.3d 496, 504 (4th Cir. 2011)). When interpreting a statute, a court should "'give the terms their ordinary, contemporary, common meaning, absent an indication Congress intended [the terms] to bear some different import.'" *In re Total Realty Mgmt., LLC*, ___ F.3d ___, 2013 WL 142069, at *4 (4th Cir. Jan. 14, 2013) (quoting *Crespo v. Holder*, 631 F.3d 130, 133 (4th Cir. 2011)). In doing so, a court will "not only look to the language itself, but also 'the

specific context in which that language is used, and the broader context of the statute as a whole.'" *Total Realty*, 2013 WL 142069 at *4 (quoting *Holland v. Big River Minerals Corp.*, 181 F.3d 597, 603 (4th Cir. 1999)).  If the statutory language is ambiguous, it is appropriate to "'turn to other evidence to interpret the meaning of the provision,' interpreting provisions harmoniously, where possible, or by reference to the legislative history, and always with the goal of ascertaining congressional intent."  *Johnson v. Zimmer*, 686 F.3d 224, 235 (4th Cir. 2012) (quoting *New Cingular Wireless PCS, LLC v. Finley*, 674 F.3d 225, 249 (4th Cir. 2012)).

In 29 U.S.C. § 2611(4)(A), (B), the FMLA defines "employer" as follows:

(A) In general. The term "employer"—

>> (i) means any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year;

>> (ii) includes—

>>> (I) any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer; and

>>> (II) any successor in interest of an employer;

>> (iii) includes any "public agency", as defined in section 3(x) of the Fair Labor Standards Act of 1938 (29 U.S.C. 203(x)); and

>> (iv) includes the General Accounting Office [now the Government Accountability Office] and the Library of Congress.

(B) Public agency.

> For purposes of subparagraph (A)(iii), a public agency shall be considered to be a person engaged in commerce or in an industry or activity affecting commerce.

This section has been interpreted in two ways.  According to the Third, Fifth, and Eighth circuits, 29 U.S.C. §§ 2611(4)(A)(ii) and 2611(4)(A)(iii) ostensibly encompass any individual supervisor at a public agency.  *See Haybarger*, 667 F.3d at 414-17; *Modica*, 465 F.3d at 184-87; *Darby*, 287 F.3d at 680-81.  The reasoning adopted in these cases is fairly straightforward.  If the term "employer" includes a "public agency" under subparagraph (iii), then "any person who acts, directly or indirectly, in the interest of an employer," as provided under subparagraph (ii)(I), includes any person who acts in the interest of a "public agency."  *See Haybarger*, 667 F.3d at 416.  In other words, "if a public employee 'acts, directly or indirectly, in the interest of an employer,' he satisfies the definition of employer under the FMLA . . . ."  *Modica*, 465 F.3d at 184.

The statutory language gives a strong indication that these subparagraphs are meant to be read together.  Specifically, "Congress's use of the word 'and' following clause (iii) suggests that there is some relationship between clauses (i)-(iv)."  *Modica*, 465 F.3d at 185; *see also Hewett v. Willingboro Bd. of Educ.*, 421 F. Supp. 2d 814, 819 (D.N.J. 2006) ("[I]n light of Section 2611(4)(A)'s use of the inclusive term 'and' linking clauses (i)-(iv), the Court does not agree with *Mitchell*, 343 F.3d at 829-30, that Congress intended those provisions to be mutually exclusive.").  Additionally, "Congress's use of the em dash following the term 'employer' indicates a relationship between clauses such that 'employer "means" what is provided for in subparagraph (i) and "includes" what is provided for in subparagraphs (ii), (iii), and (iv).'"  *Modica*, 465 F.3d at 185 (quoting *Sheaffer v. Cnty. of Chatham*, 337 F. Supp. 2d 709, 728 (M.D.N.C. 2004)).

Notably, the definition of "employer" under the FMLA and the FLSA are substantively—if not structurally—identical, except that the FMLA definition includes successors in interest and does not refer to labor organizations. *Compare* 29 U.S.C. § 2611(4)(A) (FMLA definition of "employer"), *with* 29 U.S.C. § 203(d) (FLSA definition of "employer"). At 29 U.S.C. § 203(d), the FLSA defines "employer":

> "Employer" includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization.

According to the plain meaning of the FSLA's statutory text, the FLSA provides for individual liability, *see Brock*, 867 F.2d at 808 n.6, and "appears to impose individual liability on public agency employees under some circumstances." *Jones v. Williams*, Civ. No. CCB-11-793, 2011 WL 5110380, at *3 n.2 (D. Md. Oct. 24, 2011) (Blake, J.); *see, e.g.*, *Modica*, 465 F.3d at 186-87 ("We have already held that a sheriff is an employer for purposes of the FLSA.") (citing *Lee v. Coahoma Cnty., Miss.*, 937 F.2d 220, 226 (5th Cir. 1991), *amended by* 37 F.3d 1068 (5th Cir. 1993)). Courts have reasoned that the similarity between the language of the FMLA and the FSLA in regard to the definition of "employer" militates in favor of individual liability for public employees. To these courts, the textual similarity of the two statutes suggests "that Congress intended for courts to treat the FMLA the same as the FLSA." *Haybarger*, 667 F.3d at 417. In *Modica*, for example, the Fifth Circuit said: "'[T]he fact that Congress, in drafting the FMLA, chose to make the definition of 'employer' materially identical to that in the FLSA means that decisions interpreting the FLSA offer the best guidance for construing the term 'employer' as it is used in the FMLA.'" 465 F.3d at 186 (quoting *Wascura*, 169 F.3d at 686).

This interpretation is further supported by the FMLA's implementing regulations, which provide that "[e]mployers covered by the FMLA . . . include any person acting, directly or indirectly, in the interest of a covered employer to any of the employees of the employer, any successor in interest of a covered employer, and any public agency."  29 C.F.R. § 825.104(a).  Courts have "long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations."  *Chevron, U.S.A., Inc. v. Nat. Res. Defense Council, Inc.*, 467 U.S. 837, 844 (1984) (footnote omitted).  Because the Secretary of Labor is "explicitly granted" authority to implement the FMLA pursuant to 29 U.S.C. § 2654, the Secretary's regulations "'are given controlling weight.'"  *Miller v. AT & T Corp.*, 250 F.3d 820, 833 (4th Cir. 2001) (quoting *Chevron*, 467 U.S. at 844).

Of import here, the implementing regulations specifically refer to the FLSA as an interpretive guide.  In 29 C.F.R. § 825.104(d), it states:

> An 'employer' includes any person who acts directly or indirectly in the interest of an employer to any of the employer's employees.  The definition of 'employer' in section 3(d) of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 203(d), similarly includes any person acting directly or indirectly in the interest of an employer in relation to an employee.  As under the FLSA, individuals such as corporate officers 'acting in the interest of an employer' are individually liable for any violations of the requirements of FMLA.

Thus, several courts have reasoned that "the FMLA's inclusion of public agencies in both its statutory language and its regulations demonstrates that individual supervisors at public agencies are subject to liability."  *Haybarger*, 667 F.3d at 415; *see Modica*, 465 F.3d at 186-87.

In rejecting this view, courts such as the Sixth Circuit in *Mitchell* have determined that the statutory text and structure weigh against individual liability of public sector supervisors,

concluding that "the individual liability provision and public agency provision are separate and distinct." *Mitchell*, 343 F.3d at 830; *see Sadowski*, 643 F. Supp. 2d at 755.  The Sixth Circuit identified three central reasons in support of this reading:

> First, Section 2611(4)(A) segregates the provision imposing individual liability from the public agency provision. Second, an interpretation that commingles the individual liability provision with the public agency provision renders certain provisions of the statute superfluous and results in several oddities. Finally, as evidenced by other provisions of the statute, the FMLA distinguishes its definition of employer from that provided in the FLSA by separating the individual liability and public agency provisions.

*Mitchell*, 343 F.3d at 832.  Other courts have followed.  *See, e.g.*, *Sadowski*, 643 F. Supp. 2d at 753-57.

As to the first reason articulated by *Mitchell* and its progeny, there can be no dispute that § 2611(4)(A) places the individual liability provision in a separate subparagraph from the public agency provision.  And, the use of the modifier "includes" in 29 U.S.C. § 2611(4)(A)(ii) through (iv), in comparison to the use of the modifier "means" in 29 U.S.C. § 2611(4)(A)(i), suggests that this structural separation may have substantive import.  According to the Sixth Circuit, the modifier "includes" permits subparagraphs (ii) through (iv) to relate to the primary definition of the term "employer," but not to one another.  *See Mitchell*, 343 F.3d at 829-30.  As Judge Bennett reasoned in *Sadowski*, 643 F. Supp. 2d at 754-55:

> The structure of subsection (ii) demonstrates that subsections (ii) through (iv) are independent of each other.  *See Mitchell*, 343 F.3d at 829-30; *Keene*[,] 127 F. Supp. 2d at 775-76.  Subsections (ii) through (iv) are each prefaced with the word "includes."  Subsection (ii), however, is uniquely broken down into two additional subparts, as follows: "(I) any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer; and (II) any successor in interest of an employer."  Subsection (ii) thus contains a pair of provisions that Congress clearly intended to be interrelated.  Subsections (iii) and (iv), however, are separate provisions, each of which is also prefaced by the term "includes."  *Thus, although the term "includes" necessarily embodies the language that*

> *follows it, the use of several subsections beginning with the term "includes"*
> *denotes that they are exclusive of each other.   See Mitchell*, 343 F.3d at 830
> ("[T]he separation of otherwise related concepts (*i.e.*, what the term 'employer'
> 'includes') into distinctly enumerated clauses compels an interpretation that treats
> each clause in an independent manner."). Thus, this framework indicates that,
> although subsections (ii) through (iv) all modify the term "employer," the
> subsections are themselves distinct and independent.

(Emphasis added) (footnote omitted).

Second, courts in the *Mitchell* camp have concluded that interpreting § 2611(4)(A) to permit individual liability for public employees would render other FMLA provisions superfluous, thereby violating a cardinal canon of statutory construction. *See, e.g.*, *Mitchell*, 343 F.3d at 831; *see also Orquera v. Ashcroft*, 357 F.3d 413, 420 (4th Cir. 2003) (stating that a court should not "read a statute to create surplusage, [but rather should] 'make[] sense' of the statutory scheme as a whole") (quoting *Ratzlaf v. United States*, 510 U.S. 135, 141 (1994)) (second alteration in *Orquera*). The central concern is that interpreting the FMLA to permit individual liability under § 2611(4)(A) would render § 2611(4)(B) effectively meaningless. Citing *Mitchell*, 343 F.3d at 831, the *Sadowski* Court reasoned, 643 F. Supp.2d at 756:

> If subsection (i), which provides that an employer "means any person engaged in
> commerce or in any industry or activity affecting commerce," already modified
> subsection (iii), then it would be entirely redundant for Congress to again modify
> subsection (iii) by declaring that "a public agency shall be considered to be a
> person engaged in commerce or in an industry or activity affecting commerce" in
> section 2611(4)(B).

Moreover, Judge Bennett explained in *Sadowski*, 643 F. Supp. 2d at 756 (citing *Keene*, 127 F. Supp. 2d at 776):

> [S]ubsection (ii) is further broken into two additional subparts. The first subpart
> (I) is the individual liability provision, and that subpart can be practically applied
> to subsections (iii) and (iv). The second subpart (II) is the successor-in-interest
> provision, but that second subpart makes little sense when applied to a public

agency in subsection (iii), and no sense whatsoever when applied to the Government Accountability Office and the Library of Congress in subsection (iv).

Finally, these courts contend that the relationship between the FMLA and FLSA is not as clear cut as some would suggest. Rather, according to *Mitchell*, the history of the FLSA may counsel hesitation in adopting for the FMLA the FLSA's definition of employer. The *Mitchell* Court posited:

> "In 1974 Congress merely engrafted 'Public Agency' into the FLSA by adding to an existing definition for private employers. This did create an ambiguous situation concerning the liability of public agency employees. But, in the FMLA, Congress explicitly took 'Public Agency' out of the private employer definition and disconnected it from liability based on a person acting directly or indirectly in the interest of an employer. Therefore, a better way to view the situation is that the FMLA corrected the ambiguity of the FLSA, as opposed to letting the ambiguity of the FLSA control the interpretation of the FMLA."

*Mitchell*, 343 F.3d at 832 (quoting *Keene*, 127 F. Supp. 2d at 775 n.2); *see also Sadowski*, 643 F. Supp. 2d at 756-57 (citing *Mitchell*, 343 F.3d at 832).

The issue of liability of public agency supervisory employees is a close question, and one on which distinguished jurists have reasonably disagreed. In my view, however, those courts finding in favor of individual liability of supervisors at public agencies have the better interpretation of the FMLA.

First, I am not persuaded by the "means" versus "includes" distinction. As I see it, such a subtle linguistic shift does not defeat the plain meaning of the statutory text, as articulated by the Third, Fifth and Eighth circuits. Although Congress separated various provisions into subparagraphs (i) through (iv), the FMLA employs structural signals indicating that such separation does not sever the relationship between these subparagraphs, which are all contained in the same paragraph. As noted, Congress's use of the word "and" indicates that "there is some

relationship between clauses (i)-(iv)," *Modica*, 465 F.3d at 185; *see also Hewett*, 421 F. Supp. 2d at 819 ("[I]n light of Section 2611(4)(A)'s use of the inclusive term 'and' linking clauses (i)-(iv), the Court does not agree with *Mitchell*, 343 F.3d at 829-30, that Congress intended those provisions to be mutually exclusive."), as does its use of the "em dash." *Modica*, 465 F.3d at 185 (quoting *Sheaffer*, 337 F. Supp. 2d at 728). And, the FMLA's implementing regulations collapsed the statutory text into a single paragraph, *see* 29 C.F.R. § 825.104(a), thereby challenging *Mitchell*'s reliance on the FMLA's structural separation. As stated earlier, these regulations "'are given controlling weight.'" *Miller*, 250 F.3d at 833 (quoting *Chevron*, 467 U.S. at 844). Thus, I disagree with the argument that the statute's structure and choice of modifier precludes individual liability for supervisors at public agencies.

Second, I note that a central argument made in *Mitchell* and adopted in *Sadowski* has been put into doubt, as explained by the Third Circuit in *Haybarger*. Specifically, § 2611(4)(B) is not rendered superfluous if the FMLA is interpreted to provide for public supervisor liability. *See Haybarger*, 667 F.3d at 416-17. Rather, § 2611(4)(B) "creates a presumption that public agencies engage in commerce," thereby "'reliev[ing] plaintiffs of the burden of proving that a public agency is engaged in commerce,'" as would otherwise be required in accordance with § 2611(4)(A). *Id.* (quoting *Modica*, 465 F.3d at 186).

Third, I am not persuaded that reading the individual liability and public agency provisions together would render meaningless § 2611(4)(A)(ii)(II), the companion to the individual liability provision. *See Sadowski*, 643 F. Supp. 2d at 756. Even if subparagraph (ii)(II) would be inapplicable in some circumstances, such as the public agency context, it would

retain its meaning when applied to the original definition set forth in subparagraph (i).  Thus, in a case involving a private sector employer, subparagraph (ii)(II) would *not* be superfluous.

Moreover, even assuming, *arguendo*, that the statutory language is ambiguous, and that it is appropriate to look to the legislative intent, *see Johnson*, 686 F.3d at 235, the purposes of the FMLA support an interpretation favoring public supervisor liability.  Congress specifically provided for individual liability in the private sector under § 2611(4)(A)(ii)(I), and I cannot conceive of a reason for Congress to then bar it in the public sector.  To the contrary, among the stated purposes of the FMLA, Congress included "ensuring *generally* that leave is available for eligible medical reasons."  29 U.S.C. § 2601(b)(4) (emphasis added).  It made no distinction between public and private sector employees in making its findings or in explaining the purpose of the FMLA.  *See* 29 U.S.C. § 2601 (listing Congressional findings and purposes of FMLA); S. Rep. 103-3, at 4 (1993), *reprinted in* 1993 U.S.C.C.A.N. 3 ("Private sector practices *and government policies* have failed to adequately respond to recent economic and social changes that have intensified the tensions between work and family.") (Emphasis added); H.R. Rep. 103-8(I), at 21 (1993) (same).  And, in pursuit of this goal, Congress was quite explicit in its attempt to render public agencies liable under the FMLA's self-care provisions, per §§ 2611(4)(A)(iii) and 2611(4)(B).  If Congress sought to ensure the liability of public agencies under the FMLA, "[i]t is difficult to envision that Congress would have at the same time implicitly barred suits against individuals within those same agencies."  *Hewett*, 421 F. Supp. 2d at 820.

Although specific treatment of individual liability in the FMLA's legislative history is scant, as a general principle, individual liability furthers the purposes of the FMLA through added deterrence in both the public and private sectors.  Courts have acknowledged that

individual liability "'promotes deterrence and better decision making because it allows the active wrongdoer to be held directly responsible.'"  *VanBuren v. Grubb*, 471 F. App'x 228, 235 (4th Cir. 2012) (unpublished) (addressing individual liability in wrongful discharge context); *see Carlson v. Green*, 446 U.S. 14, 21 (1980) ("It is almost axiomatic that the threat of damages has a deterrent effect, surely particularly so when the individual official faces personal financial liability.").  Put another way, individual supervisors "are more likely to obey the law if the prospective of individual liability . . . looms on the horizon."  *Nolen v. Chicago*, No. 97 C 6608, 1998 WL 111675, at *5 (N.D. Ill. March 4, 1998).  Such deterrence can be particularly important where, in spite of corporate or government policy, unlawful employment actions may be taken by individual supervisors charged with employment decisions.  *See, e.g.*, Tracy Gonos, *Policy Analysis of Individual Liability – The Case for Amending Title VII to Hold Individual Persons Liable for their Illegal Discriminatory Conduct*, 2 N.Y.U. J. Legis. & Pub. Pol. 265, 296-308 (1998) (arguing that individual liability would further goals of anti-discrimination laws through deterrence, because "[i]nstead of relying on a 'trickle down' deterrence scheme, individuals will face considerable incentives for compliant behavior regardless of how their employer responds to the threat and occurrence of employment discrimination").  *But see* Sandra F. Sperino, *Under Construction: Questioning Whether Statutory Construction Principles Justify Individual Liability Under the Family and Medical Leave Act*, 71 Mo. L. Rev. 71, 109-11 (2006) (arguing that deterrence rationale does not justify individual liability under the FMLA, in either public or private context).  In my view, the deterrence rationale for individual liability applies equally to supervisors at private and public employers, and Congress did not indicate otherwise.

In view of the FMLA's plain language and purpose, the structural oddities identified by the *Mitchell* Court, among others, are too subtle and ambiguous to support an inference that Congress intended to limit individual liability to the private sector.  Congress does not "alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes."  *Whitman v. Am. Trucking Assns., Inc.*, 531 U.S. 457, 468 (2001).

To be sure, the Supreme Court recently held that, in regard to the FMLA's self-care provision, Congress did not validly abrogate the sovereign immunity enjoyed by states under the Eleventh Amendment, per the Enforcement Clause of the Fourteenth Amendment.  *Coleman*, 132 S. Ct. at 1337-38.  In *Coleman,* the Court stated: "To abrogate the States' immunity from suits for damages under § 5 [of the Fourteenth Amendment], Congress must identify a pattern of constitutional violations and tailor a remedy congruent and proportional to the documented violations."  *Id.* at 1338.  Because Congress failed to identify such a pattern, the Court held that the States had not lost their sovereign immunity under the FMLA self-care provision.  *Id.*

I recognize that it would be an odd result for supervisors at a State's public agencies to be subject to liability in their individual capacities under the FMLA's self-care provision, when the State agencies for which they work are immune.  However, in drafting the FMLA, Congress plainly did not anticipate the Supreme Court's decision in *Coleman*, providing that states retain sovereign immunity.  Thus, there would be nothing odd in Congress's pre-*Coleman* drafting of the FMLA in the way that it did.  In my view, the result in *Coleman* does not negate the Congressional intent, gleaned from the plain meaning of the FMLA's statutory text, that individual supervisors at public agencies may be subject to liability.

In sum, I conclude that, as with the FLSA, individual liability applies to supervisors at public agencies under the FMLA.[8]   Accordingly, I will grant the Motion to Amend Reed's FMLA claims (Counts I and II), so that Reed may add Brown and Carter as defendants in their individual capacities.[9]

### ii.    Official Capacity FMLA Claims

As indicated, Reed seeks to amend the Complaint to add Brown and Carter as defendants in their official capacities.  Defendant relies on *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989), for the proposition that the State's defense of sovereign immunity, as secured by

---

[8] I hasten to add, however, that this decision only resolves the purely legal question as to whether the FMLA provides for individual liability for public supervisors.  It does not resolve whether the individual defendants in this case meet the statutory standard to be subject to individual liability.  Defendant did not oppose the Motion to Amend on that particular basis.  *See Shaeffer*, 337 F. Supp. 2d at 728-29 ("Discovery may reveal that Clarke did not exercise the requisite level of authority over Plaintiff's employment to be considered an employer under the FMLA.  However, the court cannot say that Clarke's position as an official of a public agency compels dismissal as a matter of law.").

As noted, the Fourth Circuit has not addressed the matter of individual liability at public agencies under the FMLA.  And, other courts that have addressed the question have established different standards for assessing individual liability.  For example, in *Knussman*, adopting the test employed by the Fourth Circuit under the FLSA, the district court required that, to be held liable, the individual employer must have "'hired and directed the employees who worked for the enterprise.'"  935 F. Supp. at 664 (quoting *Brock*, 867 F.2d at 808 n.6).  By comparison, in *Haybarger*, the Third Circuit adopted the Seventh Circuit's test for individual liability under the FLSA, holding that "an individual is subject to FMLA liability when he or she exercises 'supervisory authority over the complaining employee and was responsible in whole or part for the alleged violation' while acting in the employer's interest."  667 F.3d at 417 (quoting *Riordan v. Kempiners*, 831 F.2d 690, 694 (7th Cir. 1987)).  But, I need not articulate a test at this juncture.

[9] As discussed, *infra*, with respect to plaintiff's ADA claims, defendant argues that the Motion to Amend should be denied because plaintiff failed to name the individual defendants in his EEOC Charge.  *See* 42 U.S.C. § 2000e-5(f)(1) (providing that, under Title VII, a civil action may be brought only "against the respondent named in the charge").  That contention is not relevant for purposes of plaintiff's FMLA claims, however, because defendant did not advance such an argument, and the Court is not aware of any requirement that a plaintiff must file an EEOC charge prior to instituting suit under the FMLA.

the Eleventh Amendment, precludes Reed from adding Brown and Carter in their official capacities. *See id.* at 71 ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.") (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)).

The Department is correct with regard to Reed's claim for monetary damages. *See Coleman*, 132 S. Ct. at 1337-38. But, where "a state official in his or her official capacity [is] sued for *injunctive* relief . . . 'official-capacity actions for prospective relief are *not* treated as actions against the State.'" *Will*, 491 U.S. at 71 n.1 (quoting *Kentucky*, 473 U.S. at 167 n.14) (emphasis added); *Ex parte Young*, 209 U.S. 123, 159-60 (1908); *see Coleman*, 132 S. Ct. at 1350 (Ginsburg, J. dissenting) (indicating that, under the FMLA, a plaintiff may seek injunctive relief from a state official).

In *Kronk*, 2012 WL 245059, at *8, the court allowed FMLA claims against a defendant in his official capacity with regard to the plaintiff's request for reinstatement:

> In *Young*, [209 U.S. 123,] the Supreme Court held that the Eleventh Amendment does not shield state officials from suit for continuing violations of federal law. In such cases, however, the court's remedial power is limited to prospective injunctive relief and may not include retroactive awards for benefits denied or damages incurred. *Edelman v. Jordan*, 415 U.S. 651, 677 (1974). Reinstatement is, by its nature, a prospective remedy. If an employee has been discharged in violation of federal law, a federal court may order the state to rehire him. *See Coakley v. Welch*, 877 F.2d 304, 306-07 (4th Cir. 1989).

Defendant concedes that Brown is the "appointing authority" for the Department. Dep't Reply at 5 (citing Md. Code (2007 Repl. Vol., 2012 Supp.), Hum. Servs. § 3-302(c)(3) ("The responsibilities of a local director include . . . appointing personnel . . . .")). In accordance with *Kronk* and the Supreme Court's century-old precedent in *Young*, 209 U.S. 123, as to the FMLA

claims (Counts I and II), Reed is entitled to amend the Complaint to add Brown as a defendant, in her official capacity, with respect to his request for reinstatement.

According to defendant, Carter lacks the authority to reinstate Reed.  *See* Dep't Reply at 6.  Reed allows that, "[t]o the extent that Mr. Carter does not have the authority to provide the injunctive relief requested, Mr. Reed will remove any claim against Mr. Carter in his official capacity from the proposed Amended Complaint."  Reed Reply at 3.  Thus, as to Counts I and II (the FMLA claims), Reed may amend the Complaint to add Carter as a defendant in his official capacity, subject to subsequent proof that Carter has actual authority to reappointment Reed.

### B. Title VII Claims

Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individuals' race, color, religion, sex, or national origin."  42 U.S.C. § 2000e–2.  In Counts III and IV, Reed asserts discrimination claims based on disparate treatment under the FMLA, *i.e.*, that although he and similarly situated individuals were both entitled to take more than four weeks of leave under the FMLA, because of his race and gender, he was discharged when he attempted to do so.  *See* MTA at 2-3.[10]

Defendant contends that, as to the claims of race and gender discrimination under Title VII, the Complaint fails to state a claim because Reed "offers no factual allegations to support his conclusory assertions that he was discriminated against on the sole basis of his race and

---

[10] Though based on conduct essentially identical to Reed's FMLA claims, *i.e.*, interfering with or retaliating for his use of FMLA leave, the Title VII claim is directed at a separate wrong, namely, discriminatory treatment of Reed with respect to his FMLA rights.  *See, e.g., Atchley v. Nordam Grp.*, 180 F.3d 1143, 1152 (11th Cir. 1999) (holding that award of damages under both Title VII and FMLA did not represent double recovery because statutes are directed at separate wrongs).

gender." MTD at 8.  Reed responds that the Complaint "properly alleged each of the elements of a gender and racial discrimination claim, stating that he is a member of a protected group, he did not engage in any misconduct, he was terminated, and other similarly-situated employees outside his protected group were treated in a more favorable manner by Defendant."  MTA at 2.

Reed's Complaint does not contain factual allegations that could be viewed as direct evidence of discrimination.  But, in proving unlawful discrimination under Title VII, a plaintiff may rely on either direct or circumstantial evidence.  *See Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 213 (4th Cir. 2007) (citing *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (*en banc*)).  A plaintiff who lacks direct evidence of discrimination may proceed under the burden shifting approach popularly known as the *McDonnell Douglas* proof scheme.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under this approach, the plaintiff must first establish a "prima facie case of discrimination."  *Laing v. Fed. Express Corp.*, ___ F.3d ___, 2013 WL 93141, at *5 (4th Cir. Jan. 9, 2013).  If the plaintiff/employee establishes a prima facie case, "a presumption of illegal discrimination arises, and the burden of production shifts to the employer" to produce evidence of a legitimate, non-discriminatory reason for the conduct complained of.  *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 336 (4th Cir. 2011); *see Laing*, 2013 WL 93141 at *7 (applying second step of *McDonnell Douglas*).  When the defendant meets this burden, the plaintiff must then prove, by a preponderance of the evidence, "that the proffered reason was not the true reason," and that the plaintiff "has been the victim of intentional discrimination."  *See Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 256 (1981); *see Laing*, 2013 WL 93141 at *8 (applying third step of *McDonnell Douglas*).

Notably, the *McDonnell Douglas* proof scheme does not supplant the pleading requirements of Rule 8(a).  "The prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement," which delineates "'the order and allocation of proof'" in a discrimination case.  *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 510 (2002) (quoting *McDonnell Douglas*, 411 U.S. at 800).  Accordingly, in a Title VII discrimination claim, "a complaint in an employment discrimination lawsuit [need] not contain specific facts *establishing* a prima facie case of discrimination under the framework set forth in *McDonnell Douglas*."  *Swierkiewicz*, 534 U.S. at 508 (emphasis added).  Rather, as with any other claim falling within the purview of Rule 8(a), "to survive a motion to dismiss, the complaint must 'state a plausible claim for relief' that 'permit[s] the court to infer more than the mere possibility of misconduct' based upon 'its judicial experience and common sense.'"  *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 132 S. Ct. 1327 (2012); *see Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002) ("[T]he Supreme Court's holding in *Swierkiewicz v. Sorema* did not alter the basic pleading requirement that a plaintiff set forth facts sufficient to allege each element of his claim.") (Internal citation omitted).

When a plaintiff relies on circumstantial evidence to state a claim, the Fourth Circuit evaluates the sufficiency of a complaint by reference to the elements of the *McDonnell Douglas* prima facie case.  *See, e.g.*, *Coleman*, 626 F.3d at 190-91 (evaluating sufficiency of plaintiff's complaint against elements of *McDonnell Douglas* prima facie case for racial discrimination under Title VII).  The elements of a prima facie claim for Title VII discrimination based on wrongful discharge are identical as to both race and gender:

> To establish a *prima facie* case [the plaintiff] must show that: (1) he is a member of a protected class; (2) he was qualified for his job and his job performance was

satisfactory; (3) he was fired; and (4) other employees who are not members of
the protected class were retained under apparently similar circumstances.

*Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 188 (4th Cir. 2004) (citations omitted)

(emphasis in original); *see* MTA at 2.

Here, the Complaint easily satisfies the first three elements of discrimination based on

both race and gender.  First, as an African-American and as a male, *see* Compl. ¶ 5, Reed is a

member of two protected classes.  *See Mosby-Grant v. City of Hagerstown*, 630 F.3d 326, 336

(4th Cir. 2010) (noting that African-American women are members of two protected classes);

*Hopkins v. Balt. Gas & Elec. Co.*, 77 F.3d 745, 749-50 (4th Cir. 1996) ("While Congress'

particular focus in amending Title VII to prohibit discrimination on the basis of 'sex' was to

ensure equal employment rights for women, the Supreme Court has interpreted the Act's broad

language to protect both men and women.") (citing *Newport News Shipbuilding & Dry Dock Co.

v. EEOC*, 462 U.S. 669, 676 (1983)).  Second, Reed avers that his job performance was

satisfactory.  *See* Compl. ¶ 62.  Third, Reed alleges that he was subject to an adverse

employment action, in that his employment was terminated.  *See id.* ¶ 20.

As to the last element of Reed's discrimination claim, he must provide facts supporting

the allegation that he was not treated the same as "similarly situated" individuals outside of the

protected class, who are known as "comparators."  *See Coleman*, 626 F.3d at 190-91 (finding

that plaintiff failed to allege facts tending to show that employee who was not fired was similarly

situated to plaintiff); *see generally Laing*, 2013 WL 93141 at *6-7 (discussing use of comparator

evidence in employment discrimination cases).  Comparator evidence, *i.e.*, facts tending to show

differential treatment between employees who were similarly situated, "but for the characteristic

at issue," can raise an inference that "an adverse employment action was driven by a

discriminatory motive." *Laing*, 2013 WL 93141 at *6 (citing *Lightner v. City of Wilmington*, 545 F.3d 260, 265 (4th Cir. 2009)).

However, "[t]here must be 'enough common factors . . . to allow for a meaningful comparison in order to divine whether intentional discrimination was at play.'" *Coleman v. Donahoe*, 667 F.3d 835, 847 (7th Cir. 2012) (quoting *Barricks v. Eli Lilly & Co.*, 481 F.3d 556, 560 (7th Cir. 2007)). Thus, although "'complete identity'" is not required, a plaintiff "'must show substantial similarity.'" *Popo v. Giant Foods LLC*, 675 F. Supp. 2d 583, 589 (D. Md. 2009) (quoting *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 618 (7th Cir. 2000)). With respect to disciplinary actions, such as termination of employment, a valid comparator must have "engaged in conduct of comparable seriousness." *Ray v. CSX Transp., Inc.*, 189 F. App'x 154, 160 (4th Cir. 2006) (unpublished). Ultimately, "[w]hether a comparator is similarly situated is "usually a question for the fact-finder' . . . ." *Donahoe*, 677 F.3d at 856-57 (quoting *Srail v. Village of Lisle*, 588 F.3d 940, 945 (7th Cir. 2009)).

In this instance, the Department has overlooked Reed's comparator evidence. The Complaint includes allegations that similarly situated employees, outside of the protected class, were permitted to take more than four weeks FMLA leave, and did not lose their jobs. *See* Compl. ¶ 25. Indeed, Reed specifically identifies two comparators to support his claim: a white, female employee who received at least twelve weeks of FMLA leave due to her pregnancy, and a female employee of an unspecified race who received at least twelve weeks of FMLA for treatment of a "mental illness." *See id.* ¶¶ 26-27. Like Reed, these employees allegedly took FMLA leave for an arguably serious health condition. But, unlike Reed, they allegedly received

their full twelve-week entitlement, without being discharged.[11]  One of the comparators is white, thereby supporting Reed's claim for discrimination on the basis of race; both are female, supporting Reed's claim of discrimination based on gender.  In my view, these allegations are sufficient for plaintiff to withstand dismissal under Rule 12(b)(6).

Although these comparators may have sought FMLA leave for reasons different than those presented by Reed, the specific underlying health condition is not a relevant point of comparison for purposes of evaluating the sufficiency of Reed's claims.  Reed alleges that, because of his race and gender, he was discharged for trying to take leave under the FMLA for his qualifying health condition, while other employees were not.  The FMLA's self-care provision applies to any qualifying "serious health condition," 29 U.S.C. § 2612(a)(1)(D), and an employer's obligation to provide leave under the FMLA does not differ based on the underlying health condition (although these obligations may differ for other reasons, such as an employee's satisfaction of any procedural requirements for taking FMLA leave, *see supra*, n.4).  Therefore, assuming, as I must, the truth of Reed's allegations that both he and the comparators were entitled to more than a month of FMLA leave, differences as to the underlying conditions are not material.

---

[11]  In the Motion to Dismiss, defendant does not contest the validity of Reed's alleged right to continue taking FMLA leave after the expiration of his initial four-week leave, and this Opinion does not purport to evaluate the merits of Reed's FMLA claims, as asserted in Counts I and II.  For purposes of the discrimination claims, I assume the truth of Reed's allegation that he was entitled to continue taking FMLA leave for his depression.  As I explain, with respect to the discrimination claims, Reed sufficiently stated a claim by alleging that he was discharged for attempting to take more than a month of FMLA leave, while similarly situated employees (outside of the protected class) were not discharged for exercising the right to FMLA leave.

In this case, I am persuaded that plaintiff's allegations are not conclusory, as defendant contends.[12]  It may be that the comparator evidence will not prove strong enough to persuade a finder of fact that discrimination was truly at play in Reed's discharge.   But, Reed need not conclusively establish his prima facie case, or satisfy the *McDonnell Douglas* proof scheme, to survive the motion to dismiss.  *See, e.g.*, *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012) (reversing dismissal of plaintiff's complaint under Rule 12(b)(6) because district court erroneously applied *McDonnell Douglas*).  At this juncture, drawing all reasonable inferences in Reed's favor, the allegations of discrimination on the basis of race and gender state a claim that set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (brackets in original) (internal quotation marks omitted). Accordingly, I will deny the Motion to Dismiss as to Reed's Title VII claims asserting race and gender discrimination (Counts III and IV).

## C. ADA Claims

Reed alleges both wrongful discharge and failure to accommodate under the ADA.  *See* Compl. ¶¶ 63-64.  He concedes that his ADA claim against the Department for money damages is barred by the Eleventh Amendment.  *See* MTA at 2; *Garrett*, 531 U.S. at 374 (holding that

---

[12] The Carter Affidavit suggests that one of the comparators identified by Reed, in paragraph 28 of the Complaint, was subject to the same disciplinary treatment as Reed, *see* Carter Aff. ¶ 4, and further indicates that Carter does not recall the female employee identified in paragraph 29 of the Complaint.  *See id.* ¶ 5.  But, given the posture of the case, and the absence of confirmation by plaintiff, Carter's assertion cannot establish that the employee identified by Carter  in paragraph 4 of his Affidavit is, in fact, the employee specified in paragraph 28 of the Complaint.  Moreover, Carter's lack of recollection as to the employee specified in paragraph 29 of the Complaint does not establish, one way or another, that Reed's allegations as to that employee are untrue.  As a result, the Carter Affidavit does not aid in resolving the issues presented in the Motion to Dismiss and, as indicated, *supra*, need not be considered here.

Congress did not validly abrogate States' sovereign immunity from suit under the ADA). However, Reed also requests relief in the form of reinstatement.  And, in his Motion to Amend, Reed seeks leave to substitute Brown and Carter in their official capacities for the original defendant, the Department.  *See* MTA at 3.

In its Motion to Dismiss, the Department contends that the Amended Complaint fails to state a claim under the ADA, because "Reed did not request that the Department provide him with any reasonable accommodation."  MTD at 5.  Additionally, the Department asserts that Reed's failure to name Brown and Carter in the EEOC Charge of Discrimination, ECF 15-2, precludes substituting them as defendants in the Amended Complaint.  *See* Dep't Reply at 8.

Reed's ADA claims for wrongful discharge and failure to make a reasonable accommodation both require that Reed have a qualifying "disability."  *See Rhoads v. F.D.I.C.*, 257 F.3d 373, 387 (4th Cir. 2001).  The ADA defines "disability," in relevant part, as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual[.]"  42 U.S.C. § 12102(2)(A).[13]  "An impairment is a disability . . . if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population."  29 C.F.R. § 1630.2(j)(1)(ii).  "Substantially limits" is to "be construed broadly in favor of expansive coverage," "is not meant to be a demanding standard," *id.* § 1630.2(j)(1)(ii), and includes "major depressive disorder."  *Id.* § 1630.2(j)(3)(iii).

With respect to an ADA claim of wrongful discharge, the Fourth Circuit said in *Rhoads*:

---

[13] "'Disability' under the ADA and 'serious health condition' under the FMLA are distinct concepts that require different analysis."  *Rhoads*, 257 F.3d at 387 n.12 (citing 29 C.F.R. § 825.702(b)).  However, defendant does not contend that Reed's depression did not qualify under either statutory definition.

In a wrongful discharge case under the ADA, a plaintiff makes out a prima facie by demonstrating that "(1) he is within the ADA's protected class; (2) he was discharged; (3) at the time of his discharge, he was performing the job at a level that met his employer's legitimate expectations; and (4) his discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination [because of plaintiff's disability]."

257 F.3d at 387 n.11 (quoting *Haulbrook v. Michelin N. Am., Inc.*, 252 F.3d 696, 702 (4th Cir. 2001)).

As to failure to accommodate, the Fourth Circuit has explained:

In a failure to accommodate case [under the ADA], a plaintiff establishes a prima facie case by showing "(1) that he was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position . . . ; and (4) that the [employer] refused to make such accommodations."

*Rhoads*, 257 F.3d at 387 n.11 (quoting *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2d Cir. 1999)) (second alteration in original).

Reed's claims of wrongful discharge and failure to accommodate are premised on the Department's decision to terminate Reed's employment rather than providing leave for Reed to recover from his depression. *See* Compl. ¶¶ 63-64. Critically, however, "the ADA do[es] not require an employer to give a disabled employee 'an indefinite period of time to correct [a] disabling condition' that renders him [unable to work]." *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 466 (4th Cir. 2012) (quoting *Myers v. Hose*, 50 F.3d 278, 280 (4th Cir. 1995)) (second alteration in original).

For instance, in *Myers*, 50 F.3d at 282-83, the Fourth Circuit affirmed the district court's grant of summary judgment, holding that the defendant did not violate the ADA by terminating the plaintiff's employment where the defendant "refus[ed] to grant [the plaintiff] a period of time

in which to cure his disabilities."  The plaintiff's "heart failure, hypertension, and uncontrolled diabetes" had prevented him from working as a bus operator because he was unable to pass requisite physical examinations.  *Id.* at 281.  The plaintiff argued that the ADA mandated that his employer provide him a "grace period" to regain his health.  *Id.*  Rejecting this argument, the Fourth Circuit reasoned:

> For the [defendant] to be forced to stand by—or hire temporary help—while [the plaintiff] endeavors to improve his failing health would be a significant burden. We therefore hold that reasonable accommodation does not require the [defendant] to wait indefinitely for [the plaintiff's] medical conditions to be corrected, especially in light of the uncertainty of cure.

*Id.* at 283 (citing *Fuller v. Frank*, 916 F.2d 558, 562 (9th Cir. 1990)); *see also Halpern*, 669 F.3d at 466 ("[The] ADA do[es] not obligate a school to permit a student to continue in an educational program with the hope that at some unknown time in the future he will be able to satisfy the program's essential requirements.").

Reed has failed to state a claim under the ADA because the Complaint alleges that, like the plaintiff in *Myers*, he sought an accommodation—leave to treat depression—until such time as he was able to return to work, without advising when that would occur.  In other words, in the context of the ADA, Reed's conduct amounted to a request for an accommodation of an indefinite period of time for medical leave.  Although Reed characterizes his need for leave as "short-term," *see* Compl. ¶ 63, the Complaint itself contradicts that characterization.  Reed avers that, according to his psychiatrist, "Reed was 'unable to work while he is on leave[,]' and [Reed's] condition could last '*indefinitely.*'"  *Id.* ¶ 12 (emphasis added).  Reed also alleges that his psychiatrist advised that "Reed required *at least* 'a month off from work in order to be able to refocus when he returns.'"  *Id.* (emphasis added).  And, although Reed initially requested—and

received—a month of FMLA leave, he continued to take leave without indicating when he expected to be able to return.   Indeed, by the time that the Department terminated Reed's employment on July 1, 2010, more than two months had elapsed since Reed's last day of work on April 21, 2010.   In that time, "he had not obtained relief from his depression despite trying numerous medications to alleviate his symptoms."   *Id.* ¶ 15.   Thus, by the Complaint's own terms, Reed suffered from a medical condition whose cure was uncertain, for which he was taking indefinite leave; thus, his need for leave was not "short-term."   *See Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) ("[The Court] is not required . . . 'to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'") (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)); *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'shp*, 213 F.3d 175, 180 (4th Cir. 2000) ("[W]e need not accept as true . . . unreasonable conclusions . . . .").

A defendant does not violate the ADA by terminating the employment of a plaintiff whose disability would require the defendant "to wait indefinitely" for the plaintiff to be ready to work again.   *Myers*, 50 F.3d at 283 (citation omitted).   Because Reed requested that the Department wait indefinitely for Reed to be able to resume work, Reed's Complaint fails to state a claim under the ADA, and he cannot seek injunctive relief.[14]   And, because the conduct

---

[14] This result is not inconsistent with permitting Reed to pursue his discrimination claims for disparate treatment under the FMLA.   As noted, *supra* n.6, n.11, defendant did not contest Reed's alleged entitlement to continue taking FMLA leave after the expiration of the initial four weeks.   Thus, for the purpose of the Motion to Dismiss, I assumed the truth of Reed's allegation that he was entitled to leave under the FMLA's self-care provision.   But, that assumption does not, *a fortiori*, imply that Reed requested a reasonable accommodation under the ADA.

Unlike the FMLA, the ADA does not specify that leave—let alone leave of any particular duration—must be permitted for an employee with a qualifying disability.   Rather, the ADA requires a "reasonable accommodation."   And, although plaintiff was terminated before

complained of did not violate the ADA, any amendment to substitute Carter and Brown would be futile as to Count V.  *See US Airline Pilots Ass'n v. AWAPPA, LLC*, 615 F.3d 312, 320 (4th Cir. 2010) ("The district court does not abuse its discretion in denying leave when 'amendment would be futile.'") (quoting *Muffley ex rel. NLRB v. Spartan Mining Co.*, 570 F.3d 534, 543 (4th Cir. 2009)).  It follows that I need not reach the question of whether plaintiff's failure to name Brown and Carter in the EEOC Charge defeats the Motion to Amend on alternative grounds.  *See Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll.*, 848 F.2d 457, 458-59 (4th Cir. 1998) (stating the general rule that civil actions under Title VII and ADA may be brought only against a party "named in the [EEOC] charge").[15]

---

exhausting twelve weeks of FMLA leave, he does not allege that he requested a specific or finite period of time to recover from his depression.  Instead, after his approved four-week leave expired, he continued to take leave, ostensibly until he could recover, but without specifying when he expected to return to work.  In other words, like the plaintiff in *Myers*, he took leave indefinitely.  Thus, even if Reed's employer discriminated against him with respect to the FMLA, Reed's attempt to take indefinite medical leave does not constitute a request for a reasonable accommodation under the ADA.

[15] Resolution of this question would not necessarily favor defendant.  According to *Alvarado*, the EEOC naming requirement serves two purposes: (1) to provide notice to the charged party; and (2) to permit the EEOC to attempt voluntary conciliation of complaints "by bring[ing] the charged party before the EEOC."  *Id.* at 460.  It is not immediately clear that allowing suit against Brown and Carter in their official capacities would undermine the purposes of the naming requirement.  *See, e.g.*, *Scannell v. Bel Air Police Dep't*, 968 F. Supp. 1059, 1068 (D. Md. 1997) (Davis, J.) (holding that defendant could amend complaint asserting Title VII claim to add individual police department officers as defendants in their official capacity, even though officers were not named in EEOC charge against the police department, because "[p]laintiff's EEOC charge gave [d]efendants reasonably adequate notice of alleged Title VII violations, and permitted the EEOC to initiate conciliation efforts").  Moreover, as noted in *Scannell*, *id.* at 1067, "a long line of authority makes plain that individuals may be sued in their official capacity if they are substantially identified with the defendant organization named in the EEOC charge."  *See, e.g.*, *Eggleston v. Chicago Journeymen Plumbers' Local 130*, 657 F.2d 890, 905-06 (7th Cir. 1981), *cert. denied*, 455 U.S. 1017 (1982); *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir. 1977); *McAdoo v. Toll*, 591 F. Supp. 1399, 1403-04 (D. Md. 1984).

Accordingly, I will grant the Motion to Dismiss as to Count V and deny the Motion to Amend as to Count V.

**Conclusion**

For the foregoing reasons, I will grant the Motion to Dismiss as to Counts I, II, and V, but with leave to amend Counts I and II; I will deny the Motion to Dismiss as to Counts III and IV; and I will grant the Motion to amend Counts I and II to permit plaintiff to substitute Brown and Cater as defendants in regard to his FMLA claims.

Date: February 7, 2013                                 _____/s/_____

                                                       Ellen Lipton Hollander
                                                       United States District Judge